1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| THUNDER EAGLE GHOST DANCER A/K/A JAMES KEITH JOHNSON, | Case No. CV 15-3164-VBF (GJS) |
|---|---|
| Plaintiff | **MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| CHARLES E. SAMUELS JR. AND LINDA T. MCGREW, | |
| Defendants. | |

18

**INTRODUCTION**

19  On April 28, 2015, Thunder Eagle Ghost Dancer a/k/a James Keith Johnson
20 ("Johnson") filed a civil rights complaint under 42 U.S.C. § 1983 against Charles E.
21 Samuels Jr., Director of the Federal Bureau of Prisons ("BOP"), and Linda T.
22 McGrew, Assistant Director of F.B.O.P. Reentry Services Division and former
23 Warden of U.S.P. Victorville, in their individual and official capacities. [Dkt. 1,
24 Compl. at 1, 7.][1] Under 28 U.S.C. § 1915A(b), this Court has the responsibility to

---

[1] Because the Complaint is filed against federal officials, the proper vehicle is an action under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), not 42 U.S.C. § 1983. Because the standards are nearly identical, the Court construes the Complaint as if it alleged a *Bivens* action. *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011) ("[A] *Bivens* action is the federal analog to an action against state or local

screen the Complaint to determine if its claims are "frivolous, malicious, or fail[] to state a claim upon which relied may be granted; or seek[] monetary relief from a defendant who is immune from such relief." Exercising that authority, the Court dismisses the Complaint with leave to amend.

## ALLEGATIONS OF THE COMPLAINT

### I. Underlying Facts

**A. Johnson's May 2012 Knee Replacement Surgery**

On May 1, 2012, Dr. Louis Redix, an outside contracted orthopedic surgeon, performed a total right knee replacement surgery on Johnson at Barstow Community Hospital. [Compl. at 10.] According to Johnson, he was "made to walk on May 5, 2012, then transferred back to prison." [*Id.*] "[W]hile being returned to U.S.P. Victorville" "on May 5" "in a wheelchair with no f[oo]t rest[s] or leg supports," an unnamed "officer drove [Johnson's] leg that [had been] operated on into the pavement and concrete (3) times prior to even getting into the van[,] causing [him] severe pain, almost passing out, screaming to stop." [*Id.*]

According to Johnson, he did not receive "the immediate physical therapy that is required for any [and] all knee replacement procedures" and "did not start physical therapy until approximately August 2012." [*Id.*] The result of the delay, Johnson alleges, was "severe muscle loss," "less chance of healing and recovery for the right knee," and his continued required use of a wheelchair. [*Id.*]

**B. Johnson's December 2012 Surgery**

The Complaint further alleges that, on December 18, 2012, Dr. Louis Redix was supposed to "operate[] on [Johnson's] right shoulder to do a rotator cuff repair, on

---

officials under § 1983."). In any amended complaint, Johnson should allege a suit against federal officials under *Bivens*, not section 1983.

2

[his] right finger . . . to cut it so the bones would come together and place a pin in it[,] and to operate on [his] left elbow to remove a loose splinter." [*Id.* at 11.] "Instead, Dr. Louis Redix totally removed [his] right elbow, cut the tricep muscle and ligaments from the elbow, [and] left everything including nerves just dangling inside." [*Id.*] Redix also "plac[ed] a screw in the [right] shoulder and a pin in [Johnson's] humerus bone." [*Id.*] As for Johnson's right pinky finger, Dr. Redix supposedly "cut" it, but never placed the pin into it as Johnson had expected. [*Id.*]

According to Johnson, these December 2012 procedures rendered him a "cripple for life" because he has "no use of [his] right arm" as he cannot raise it above his chest and "because the tricep muscle and ligaments are torn and cut." [*Id.*] He also alleges that his right pinky "doesn't work." [*Id.*] Johnson alleges that he has "never been given any physical therapy which is required for any of these surgeries" and was never told why his procedures resulted in diminished capacity. [*Id.*]

## II. Theories of Liability

It is difficult to parse out precisely what Johnson's theories of liability are because he includes numerous factual allegations that appear irrelevant to his claims. Johnson purports to sue under theories of "8th Amendment cruel and unusual punishment, medical care negligence, incompetence allowing fraud" based on certain actions, and certain violations premised on BOP policies. [*Id.* at 9.] Johnson is clear, however, that he asserts only two claims—the first based on the May 2012 surgery and the second based on the December 2012 surgery. Cutting through what appear to be irrelevant details about various BOP policies, the Court construes the Complaint as primarily alleging two Eighth Amendment claims based on improper medical treatment.[2]

---

[2] If Johnson has other legal theories he wishes to pursue, consistent with Rule 8(a)(2) of the Federal Rules of Civil Procedure, the Complaint must include them as "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the

3

### A. Bureau of Prisons Director Charles E. Samuels

Johnson's allegations against Director Samuels relate to his alleged policymaking and supervisory functions. In support of his May 2012 claim, Johnson alleges that Samuels wrongly "classified Victorville as a care Level III facility," "did not provide training to transportation staff officers," "did not do a background check to see the history of any complaints, drugs/alcohol, or behavior problems of Dr. Louis Redix," and "allows a policy of the Bureau of Prisons to hire outside contract medical people who are lesser qualified[.]" [*Id.* at 9.] Similarly, for his December 2012 claim, Johnson asserts that Samuels "jeopardize[d] [his] health and welfare and denied [him] proper and adequate medical care" by classifying Victorville as a care Level III facility even though it does not have, according to Johnson, the proper equipment or onsite staff. [*Id.* at 11.] The Complaint also alleges that Samuels has violated Johnson's civil rights "[b]y having policies that allow cheaper, less qualified, immoral contracted medical personnel to perform surgeries," "by not doing a thorough history check on outside contracted Dr. Louis Redix," and "[b]y having policies in place that deem a prisoner's refusal to a medical procedure as a waiver to further treatment." [*Id*. at 11-12.]

### B. Ex-Warden of USP Victorville Linda McGrew

Johnson's allegations against ex-Warden McGrew are far less attenuated. Johnson claims that McGrew "allowed and approved major surgeries to prisoners," including his May 2012 knee surgery, with knowledge that U.S.P. Victorville could not provide adequate medical care because it was not a qualified care Level III medical facility," *i.e.*, it "had no hospital beds, no medical devices to assist in movement in the cell," and no onsite physical therapist. [Compl. at 10.]³ As with

---

grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

³ Johnson alleges that Samuels wrongly classified Victorville as a Level III facility,

4

Samuels, the Complaint alleges that McGrew failed to "provide special training for officers who are transporting prisoners to and from surgery." [*Id.*]

In Claim I, which concerns Johnson's May 2012 medical care, he asserts that McGrew "approved Dr. Louis Redix . . . to perform the surgery even though she had numerous complaints from other prisoners and complications from surgeries on other prisoners by Dr. Redix," and "did not provide [Johnson] the immediate physical therapy that is required for any [and] all knee replacement procedures." [*Id.*] In Claim II, Johnson alleges that McGrew "allowed Dr. Louis Redix who had previously messed up [his] right knee total replacement to perform surgeries on [him] on Dec[ember] 18, 2012" "which she approved knowing full well that [he] had complained to her and medical staff about Dr. Louis Redix" and requested "a different orthopedic." [*Id.* at 11.] Johnson claims that McGrew "has to approve all surgeries, etc. for all prisoners under her care." [*Id.*]

## III. Relief Sought

Presumably against both defendants (the Complaint does not specify), Johnson seeks $15,000,000 in compensatory damages as well as immediate release from prison. [Compl. at 14.] In addition, against the Federal Bureau of Prisons,[4] Johnson requests a court order changing various BOP medical care policies. [*Id.*]

## GOVERNING STANDARDS

The Court's screening of the Complaint is governed by the following standards.

---

and so these contentions appear facially inconsistent. [*Compare* Compl. at 9 *with id.* at 10.] However, emphasizing the word "qualified," the Court construes Johnson's allegation to be that McGrew knew that Victorville was undeserving of the Level III designation.

[4] Although technically the Bureau of Prisons is not a defendant here, by suing the Director of the Bureau of Prisons in his official capacity, Johnson pursues the same suit. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007).

5

**I.     Review Under 28 U.S.C. § 1915A**

"Dismissal for failure to state a claim under § 1915A 'incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).'" *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012)). "To survive § 1915A review, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations and quotation marks omitted). "The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Id.* n.1 (quoting *Wheeler v. Wexford Health Servs., Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

That said, "[c]ourts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). According to the Ninth Circuit, "*Iqbal* did not alter that rule," so the court should "afford the [plaintiff] the benefit of any doubt." *Wilhelm*, 680 F.3d at 1121 (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation marks omitted)).

**II.    Eighth Amendment Violation**

The government's failure to satisfy its "obligation to provide medical care for those whom it is punishing by incarceration" can constitute an Eighth Amendment violation cognizable under § 1983 or *Bivens*. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103-05 (1976)). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." *Id.* This test includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel,* 681 F.3d 978, 985 (9th Cir. 2012).

"A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta v. Dillard*, 744 F.3d 1076,

1081 (9th Cir. 2014) *cert. denied,* 135 S. Ct. 946 (2015) (quoting *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006)) (internal quotation marks omitted). A prison official's action is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health and safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 835. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Colwell*, 763 F.3d at 1066 (quoting *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir.1988)). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this [claim]." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (citations omitted); *see Farmer*, 511 U.S. at 835 (explaining that deliberate indifference "requires more than ordinary lack of due care"). In fact, "[e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Id.*

## DISCUSSION

### I. Johnson Has Not Stated an Eighth Amendment Claim Against Director Samuels.

Johnson attempts to state two factual theories for Samuels's liability: that certain BOP policies caused his inadequate medical care, and that Samuels did not properly perform background checks or train officers transporting prisoners receiving medical care. The Complaint fails to allege plausibly (1) Samuels's personal participation, (2) Samuels's deliberate indifference, and (3) causation.

**A. Personal Participation**

"[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th

Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Accordingly, the Director's "senior position does not by itself make him liable for [constitutionally violative action] perpetrated by subordinates; rather, he must have engaged in culpable action or inaction himself." *Id.* So to state a valid *Bivens* claim, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, had violated the Constitution." *Id.*

Here, none of the factual bases for Johnson's claim against Samuels state a plausible claim that the Director of the Bureau of Prisons was personally involved. Johnson does not allege that Samuels should have himself performed background checks on medical professionals or himself have trained officers about transportation of prisoners. Rather, Johnson's claims seek to impose a cleverly disguised vicarious liability by arguing that as Director, it was Samuels's policies that led to Johnson's purported injury. But there is not even an allegation that Samuels ***personally*** put the policies into place. And even if there were, for the reasons that follow at Part I.C., such allegations would not *plausibly* allege an Eighth Amendment violation because, absent additional factual elaboration, it is not plausible that the policies Johnson identified actually caused his injury.

**B. Deliberate Indifference**

Even had Johnson alleged personal participation, he did not allege that Samuels was deliberately indifferent. As stated above, deliberate indifference requires pleading that Samuels knew of and disregarded a substantial risk to Johnson's health and safety. *Farmer*, 511 U.S. at 835. The Complaint contains no allegation about Samuels's state of mind, let alone that he knew of Johnson, and knew that Johnson might be facing harm by receiving surgery from Dr. Redix. Nor, in the absence of specific factual pleading, would such a conclusory claim be plausible under *Iqbal*. Samuels is responsible for the administration of a prison system that holds many thousands of inmates, of which Johnson is just one. There is no reason to believe

that Samuels would have specific knowledge of Johnson's personal circumstances, or any harm that was likely to befall Johnson.

Nor are Johnson's contentions that Samuels acted with deliberate indifference in promulgating certain prison policies supported by the Complaint's allegations. To find deliberate indifference here, Johnson would have to allege that Samuels knew that hiring outside contractors would harm inmates, or that he knowingly misclassified Victorville in a manner that would cause inmates serious medical harm. *Id.* Johnson alleges neither, and so he fails to plead this element of a *Bivens* action premised on an Eighth Amendment violation.

### C. Proximate Causation

"To state a claim under § 1983," and thus under *Bivens* as well, "a plaintiff must plead that the officials, acting under color of" "law, **caused** the deprivation of a federal right." *OSU Student Alliance*, 699 F.3d at 1061 (internal quotation marks and citations omitted, emphasis added); *cf. Hartman v. Moore*, 547 U.S. 250, 259 (2006) (in a civil rights action premised on retaliation, a "*Bivens* (or § 1983) plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action"). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1095 n.9 (9th Cir. 2009) (quoting *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)).

Even if Johnson had properly pled the personal participation and deliberate indifference of Director Samuels, in order to proceed on a claim against him, Johnson would have to demonstrate that the policies he identified were responsible for the medical injuries he suffered. But here, such a conclusion is far too attenuated. For example, it is true that without a policy allowing for outside orthopedic surgeons, Dr. Redix would never have operated on Johnson. But that

1  does not mean that the policy caused his bodily injury.  Johnson's real complaint is
2  against Dr. Redix, the doctor who operated on him, and perhaps ex-Warden
3  McGrew, his caretaker who allegedly sent him to Dr. Redix with knowledge of the
4  doctor's poor performance.

**II.   Based on the Court's Initial Preliminary Review, Johnson Has Stated an Eighth Amendment Claim against Ex-Warden McGrew.**

Upon preliminary review (which may be challenged if a complaint is ultimately served), Johnson has stated an Eighth Amendment claim against McGrew.  Drawing all inferences in favor of Johnson, he alleges that McGrew personally approved Johnson's surgery and deliberately sent him to an orthopedic specialist she knew to be a substandard medical professional over his objection.  If McGrew really did know that Dr. Redix would provide substandard care, but hired him to perform surgery on inmates regardless, Johnson might have a meritorious *Bivens* claim.

The Court is somewhat skeptical that McGrew exercises the level of authority over prison medical care that Johnson alleges.  But, at this stage, the Court must assume that Johnson's allegation of McGrew's personal involvement is warranted because it cannot be said that it is facially implausible.  Johnson is reminded of his Rule 11 obligation, as a signatory on the complaint, to only make "factual contentions [that] have evidentiary support or, if specifically so identified, [that] will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

The Court notes that it also has some concerns about Johnson's requests for relief.  For instance, "a *Bivens* suit against a defendant in his or her official capacity [is] merely … another way of pleading an action against the United States, which [is] barred by the doctrine of sovereign immunity." *Consejo de Desarrollo Economico de Mexicali, A.C.*, 482 F.3d at 1173 (*quoting Nurse v. United States,* 226 F.3d 996, 1004 (9th Cir. 2000)) (modifications added).  So Johnson likely cannot obtain monetary relief against Warden McGrew in her official capacity.  Nor is it

clear to the Court that Johnson may obtain injunctive relief against McGrew under *Bivens* (in either capacity), especially because McGrew is no longer a warden in a facility Johnson occupies. At the screening stage, the Court is not yet willing to rule that Johnson cannot seek particular remedies. Nonetheless, Johnson should consider his prayer for relief if he decides to file an amended complaint.

## CONCLUSION

For all of the foregoing reasons, the Complaint must be dismissed because the claims against Director Samuels fail to state a claim upon which relief can be granted.

**IT IS ORDERED** that:

(1) the Complaint is DISMISSED for failure to state a claim upon which relief can be granted; and

(2) Johnson is GRANTED leave to file an amended complaint, titled "First Amended Complaint" by no later than August 1, 2015, remedying the deficiencies discussed above. The First Amended Complaint must be complete in and of itself without reference to prior complaints or already-filed documents. **Failure to timely file the First Amended Complaint may result in dismissal with prejudice.**

**IT IS HEREBY ORDERED.**

DATED: June 22, 2015      _____
                          GAIL J. STANDISH
                          UNITED STATES MAGISTRATE JUDGE

11